837 P.2d 1196

Adeline N. CIENFUEGOS, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Jeffrey A. Hotham, a judge thereof, Respondent.

and

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

Calvin COKER, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Rufus C. Coulter, a judge thereof, Respondent.

STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

Kenny W. EARLY, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, and the Honorable Jeffrey A. Hotham, Respondent.

and

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

Nos. 1 CA–SA 91–302, 1 CA–SA 92–049 and 1 CA–SA 92–095.

Court of Appeals of Arizona, Division 1, Department C.

May 12, 1992.

Review Denied Oct. 20, 1992.

Dean W. Trebesch, Maricopa County Public Defender by Albert H. Duncan, Lisa A. Gilels and Carol Scott Berry, Deputy Public Defenders, Phoenix, for petitioners.

Richard M. Romley, Maricopa County Atty. by Gerald N. Grant, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

MELVYN T. SHELLEY, Judge.*

We have previously accepted jurisdiction in Adeline M. Cienfuegos' special action, with this opinion to follow. We now accept jurisdiction in the special actions filed by Calvin Coker and Kenny W. Early. The issue presented in these consolidated cases has arisen in numerous criminal actions and has been the subject of conflicting rulings by different trial judges. Relief by special action is appropriate because these are cases of statewide concern and they involve legal principles independent of controverted issues of fact. *Lewis v. Warner,* 166 Ariz. 354, 802 P.2d 1053 (App.1990).

Adeline N. Cienfuegos, Calvin Coker, and Kenny W. Early (petitioners) were committed to the State Department of Corrections. The Board of Pardons and Paroles found that petitioners were eligible for the Home Arrest Program pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 31–236. Arizona Revised Statutes section 31–236(B) reads:

> B. The board of pardons and paroles shall determine which prisoners are released to the home arrest program based on the criteria in subsection A of this section and based on a determination that there is a substantial probability that the inmate will remain at liberty without violating the law after considering the offense for which the inmate is presently incarcerated, the prior record of the inmate, the conduct of the inmate while incarcerated and any other information concerning the inmate which is in the possession of the state department of corrections, including any presentence report. The board of pardons and paroles maintains the responsibility of revocation as applicable to all parolees.

Petitioners signed Home Arrest Authorization and Conditions of Supervision forms which instructed them and in which they acknowledged the rules to be followed. Pertinent portions read:

> ... You need to know that you are an inmate and not a releasee. As an inmate, you are subject to all rules and regulations of the Department of Corrections the same as an inmate in prison. (Page 1 of 2, Introduction)

> ... I will not leave my place of residence for any reason unless authorized by my Home Arrest Officer or in case of emergency.... Unauthorized leave is a violation of A.R.S. § 13–2503, Escape in the Second Degree, and may result in a felony charge being filed. (Page 1 of 2, paragraph 3)

> I will not attempt to remove, damage, or disconnect the monitoring equipment which is in my place of residence or on my person. I understand that theft or damage to equipment may result in additional felony charges, pursuant to A.R.S. 13–1602, and A.R.S. 13–1802. I am financially responsible for any intentional damage to the monitoring equipment. (Page 2 of 2, paragraph 15)

Petitioners were placed on home arrest and allegedly violated the conditions of supervision by unauthorized absences.

Petitioners were indicted under A.R.S. section 13–2503, on a charge of Escape in the Second Degree, a class 5 felony. Each indictment alleged that the petitioner:

---

* NOTE: The Honorable Melvyn T. Shelley was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Constitution article VI, section 20.

... knowingly escaped or attempted to escape from a correctional facility, ... (Arizona State Department of Corrections Home Arrest Site), in violation of A.R.S. 13–2503, 13–2501, 31–236, 31–342, 13–701, 13–702, 13–801, and 13–812.

Petitioners moved to dismiss on several grounds. The trial judges denied the motions to dismiss.

Petitioners contend that a person under home arrest is not in a correctional facility. We disagree.

Arizona Revised Statutes section 13–2501 provides in pertinent part:

In this chapter, unless the context otherwise requires:

....

2. "Correctional facility" means *any* place used for the confinement *or control of a person:*

(a) Charged with or convicted of an offense; ...

Arizona Revised Statutes section 31–236(C)(1) through (7), and (D) reads:

C. Home arrest is conditioned on the following:

1. Active electronic monitoring surveillance for a minimum term of one year or until eligible for general parole.

2. Participation in gainful employment or other beneficial activities.

3. Submission to alcohol and drug tests as mandated.

4. Payment of the electronic monitoring fee in an amount determined by the board of not less than one dollar per day and not more than the total cost of the electronic monitoring unless, after determining the inability of the prisoner to pay the fee, the board requires payment of a lesser amount. The fees collected shall be returned to the department's home arrest program to offset operational costs of the program.

5. Remaining at his place of residence at all times except for movement out of the residence according to mandated conditions.

6. Adherence to any other conditions imposed by the court, board of pardons and paroles or supervising corrections officers.

7. Compliance with all other conditions of supervision.

D. A prisoner placed on home arrest is on inmate status, is subject to all the limitations of rights and movement and is entitled only to due process rights of return.[1]

Thus, a person on home arrest is on inmate status "subject to all the limitations of rights and movement" to which other inmates are subject.

■ The conditions imposed by statute and the regulations and conditions of supervision to which a home arrestee is subjected constitute "control of a person" (A.R.S. section 13–2501(2)) in every sense of the word. A person under home arrest is in a "correctional facility."

■ Petitioners have another argument based on A.R.S. section 13–2501(2)(c). That statute reads in part:

[H]owever, for purposes of this chapter, being within the control of a correctional facility does not include release on parole, probation or by other lawful authority upon condition of subsequent personal appearance at a designated place and time.

Petitioners point out that A.R.S. section 13–2501(2), which defines correctional facility, provides that parolees are not within the control of a correctional facility. Therefore, they opine that home arrestees are in essence parolees since the Board of Pardons and Paroles has the duty of placement and supervision. We disagree.

The restrictions placed on those under home arrest are much greater than those placed on people who are on parole. Furthermore, unlike a home arrestee, a parolee is not on inmate status.

1. This section was amended effective January 1, 1992. The amendment without changing word-

ing changed paragraph D to paragraph E.

■ Petitioners look to another statute to support still another argument. Arizona Revised Statutes section 31–271 reads:

Any adult correctional facility acquired, converted or constructed shall confine more than one person in each cell or room except as strictly necessary for the purposes of punishment or the protection of specific prisoners.

Petitioners assert based on this statute that to be a correctional facility a facility must be owned by the state and must confine more than one person in each cell or room. We disagree. This section is under the heading of "Correctional Facilities Construction" and obviously applies only to facilities owned by the state. It does not limit the definition of correctional facility as stated in A.R.S. section 13–2501. Arizona Revised Statutes section 13–2501's use of the term "any place" and "a person" does not require more than one person to be in the facility nor does it require that the facility be owned by the state.

The petitioners rely on a case decided by the Alaska Court of Appeals, *State v. Crosby*, 770 P.2d 1154 (1989), which held that a furloughed prisoner who walked away from a residential drug treatment center could not be charged with escape from a correctional facility. The court found that the defendant was under official detention while he was in the drug treatment center but concluded that the treatment center was not a "correctional facility" as that term is defined in the Alaska statutes. Correctional facility was defined as "premises ... used for the confinement of persons under official detention." The court reasoned that all custody is not confinement and under Alaska law it was not clear what the legislature meant by "confinement." Although the Alaska court in *Crosby* discussed, among other things, the distinction between "custody" and "confinement" as those terms are used in the Arizona statutes, it did not deal with A.R.S. section 13–2501(2), which defines "correctional facility" as any place used for the confinement and *or control* of a person. Thus *Crosby* is not dispositive.

■ We conclude that a home where a home arrestee is placed constitutes a correctional facility.

■ Petitioners assert that A.R.S. sections 13–2503 and 31–233(H) are in conflict if they both apply to the same act. Therefore, they assert that when a general statute (A.R.S. section 13–2503) and a more specific statute (A.R.S. section 31–233(H)) are in conflict, the more specific applies. Thus, they contend that this indicates that the legislature intended A.R.S. section 31–233(H) to be the exclusive statute under which petitioners may be prosecuted. They also posit that the legislature enacted A.R.S. section 13–2503 with its mandatory consecutive sentence requirement in recognition of risk to the guards in prison from escapees therefrom. They claim that A.R.S. section 31–233(H) did not mandate a consecutive sentence because guards would not be at risk as a result of the violation of that section. They assert that this is further indication of legislative intent that A.R.S. section 31–233(H) would be the exclusive statute for prosecution of those who fail to return to home arrest. Because we find that A.R.S. section 31–233(H) does not apply to the factual situations involved in each of the three cases, it is not necessary to discuss these arguments.

Petitioners assert that A.R.S. section 31–233(H) is the exclusive criminal penalty under which the petitioners may be prosecuted. Therefore, they contend that a failure to return to home arrest can only be prosecuted under A.R.S. section 31–233(H). We hold that said section is not applicable to petitioners' alleged failures to return to home arrest.

Arizona Revised Statutes section 31–233(H) reads:

Any inmate who knowingly *fails to return from* furlough, *home arrest*, work furlough or temporary removal or temporary release granted under the provision of this section is guilty of a class 5 felony. (Emphasis added.)

■ Webster's Third New International Dictionary defines return as "the act of coming back to *or from a place or condition* (his [return] to civilian life) (on their

[return] from a long trip)." (Emphasis added.) In the case of *Seligmann v. Mandel*, 185 N.Y.S.2d 484 at 489, 16 Misc.2d 1026, that court stated, "The word 'from' is by definition 'a term of exclusion unless by necessary implication it is manifestly used in a different sense.'" There is nothing in the subsection to indicate that any special meaning was intended by the legislature to be given to the word "from." The words "fails to return from home arrest" excludes by necessary implication that home. Petitioners were located in correctional facilities other than a home before they were placed on home arrest. Therefore, failure to return from home arrest would mean failure to return to the facility they were in prior to placement.

 It is obvious that when an inmate "fails to return from furlough, ..., work furlough or temporary removal or temporary release" that the inmate must return to the facility that he or she was in prior thereto. In order for section 31–233(H) to apply to the defendants in this case, the words "fails to return from ... home arrest" would have to be interpreted to mean "fails to return to home arrest." In order to reach this conclusion it would be necessary to determine that the legislature intended the word "from" to be interpreted to mean "to" only in one of the five situations mentioned in the subsection. We opine that this was not the legislature's intention. Calvin Coker and Kenny Early left the homes where they were confined without permission. Adeline Cienfuegos left with permission but failed to return as required. None of them failed "to *return from* ... home arrest. [Emphasis added.]" A.R.S. § 31–233(H). Subsection 31–233(H) only applies to home arrestees when they fail to return to the correctional facility that they were in prior to placement on home arrest when required to return.

Arizona Revised Statutes section 31–233(H) does not apply to petitioners' alleged failure to return to home arrest. Thus there is no conflict between that section and A.R.S. section 13–2503. The trial courts did not abuse their discretion in denying each petitioner's motion to dismiss.

They may be prosecuted under A.R.S. section 13–2503. Jurisdiction is accepted and relief is denied in each case.

KLEINSCHMIDT, P.J., and EUBANK, J., concur.